UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE J. SCHMITZ,

        Plaintiff,

                                        Case Number 08-14559-BC

v.                                          Honorable Thomas L. Ludington

VILLAGE OF BRECKENRIDGE,
VILLAGE OF BRECKENRIDGE
COUNCIL, JAMES BUCHANAN,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On November 27, 2008, Plaintiff Lawrence J. Schmitz filed a seven-count complaint against Defendants Village of Breckenridge, the Village of Breckenridge Council, and James Buchanan, arising out of the non-renewal of his employment contract as Village Manager. Plaintiff's first two counts, alleged pursuant to 42 U.S.C. § 1981, have been dismissed pursuant to a stipulation of the parties. The remaining counts allege due process and equal protection violations pursuant to 42 U.S.C. § 1983; age discrimination and retaliation under the Michigan Elliot Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101 et seq.; and breach of contract under Michigan law.

Now before the Court is Defendants' motion for summary judgment [Dkt. # 11], filed on July 27, 2009. Plaintiff filed a response [Dkt. # 18] on September 3, 2009. Defendants did not file a reply. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendants'

motion will be granted in part and denied in part.

I

Plaintiff began employment as Village Manager of the Village of Breckenridge on March 1, 2000.  Plaintiff's most recent employment contract governed his employment from March 1, 2005, to February 29, 2008.  On February 29, 2008, Plaintiff was approximately sixty-six years old.

Under Mich. Comp. Laws § 65.8, a village council is authorized to employ a village manager, who "shall serve at the pleasure of the council."  Section 65.8 also authorizes a village council to enter into an employment contract with the village manager for a time period not to exceed six years.  Village of Breckenridge Administrative Code § 230.02(b), adopted pursuant to the Villages Act, Mich. Comp. Laws §§ 61.1 et seq., also provides as follows:

> The Manager shall serve at the pleasure of the Council and may be removed by the affirmative vote of four or more Trustees, but only after a hearing before the Council.  The President may for cause, suspend the Manager with full pay, until the hearing.  The action of the Council in removing the Manager shall be final.

As required by § 65.8(3), Plaintiff's employment contract provided, "Nothing contained herein shall limit, prevent, or otherwise interfere with the right of the Council to terminate the services of the Manager at any time, subject only to the provision set forth in paragraph (c) and (d) of section 2."  Paragraphs 2(c) and (d) provided as follows:

> (c) In the event that the Manager is terminated by the Council during such time that the Manager is willing to perform the duties of the Village Manager, then, in that event, the Village agrees to pay the Manager a lump sum cash payment equal to thirty days at his then current rate of salary.  Further, said manager's benefits shall continue for a thirty-day period. . . .
> (d) In the event the Village at any time reduces the salary or other financial benefits of the Manager, or in the event the Village refuses to comply with any provision contained in this Contract, or the Manger (sic) resigns from his position following a recommendation by majority of the Council that he resign, then the Manager may, at his option, be deemed to be terminated, within the meaning of this agreement, and shall be entitled to the aggregate payment provided for in paragraph (c) of this section 2.

Pl. Br. Ex. 1.  Paragraph 5(g) provided that "[t]he Village Manager will be subject to a yearly review by the Village President, with the Council in concurrence.  The review shall be completed each December."  Finally, paragraph 4 provided that the Village Manager was to receive all benefits enjoyed by other Village employees, excluding retirement benefits.

On January 23, 2008, the Village Council held a special meeting, at which Defendant Buchanan was present, as President, as were all six of the other council members, including Jeff Anderson, Linda Chapin, Dennis Hagey, Leeann Maurer, Tim Schaub, and Gena Schrems.  *See* Def. Br. Ex. 2 (meeting minutes).  Plaintiff was also present, although he testified that he only received notice of the meeting when he encountered one of the council members in town.  Pl. Dep. 10:3-10:21 (Apr. 13, 2009); Def. Br. Ex. 1.  Defendants maintain that notice of the meeting was properly posted.

The meeting minutes reflect that, after receiving public comments, a motion to renew Plaintiff's contract failed by a vote of four to three.  A second motion, to not renew Plaintiff's contract, passed by a vote of four to three.  A third and final motion passed to notify Plaintiff in writing, by certified mail, that his contract would not be renewed.  At his deposition, Plaintiff testified that he did not speak on his own behalf because he "knew how the vote was going to be, four to three, I knew I wasn't going to overturn that, it was pretty clear that they were bent on getting rid of me one way or another so I felt it would be futile.  Plus, you know, I was rather upset and I might say some things that just didn't need to be said." *Id.* 24:21-25:1.

Defendant Buchanan, along with council members Anderson, Chapin, and Schaub, voted to not renew Plaintiff's contract.  The three council members who voted to renew Plaintiff's contract, Hagey, Maurer, and Schrems, resigned as of January 24, 2008.  At a subsequent regular meeting on February 18, 2008, three new council members were appointed and Defendant Buchanan stated that

he would like to appoint Bob Mecomber, the Chief of Police, as interim Village Manager for six months. *See* Def. Br. Ex. 2 (meeting minutes). Ultimately, Mecomber, who was approximately fifty years old, was appointed.

A letter dated January 24, 2008, from Defendant Buchanan to Plaintiff provides, "You are hereby notified that on February 29, 2008 your contract will not be renewed and is a termination of employment." Def. Br. Ex. 3. A letter dated February 1, 2008, from Defendant Buchanan to Plaintiff provides, "The Council has reviewed your agreement and it has decided that it will be in the best interests of the Village if you discontinue your job responsibilities immediately." Def. Br. Ex. 3. Plaintiff contends that Defendant Buchanan's representation that the Village Council made that decision is false. The letter further provides that Plaintiff will receive his salary and benefits for the entire month of February. Finally, the letter recites that Plaintiff notified the Village Council that he was seeking legal representation, and included an offer to pay Plaintiff "the 30 days severance pay as referenced in paragraph 2(c) of the agreement and an additional two weeks of salary" in exchange for a release of claims.

Plaintiff alleges that he was removed from his position by Defendant's Chief of Police at the direction of Defendant Buchanan on February 7, 2008. A letter, dated February 13, 2008, from Peter C. Jensen to Plaintiff contains a demand for Plaintiff "to return all discs or documents taken from the Village officers, and provide any passwords which will allow the Village to access records." Def. Br. Ex. 3. The letter accuses Plaintiff of destroying computer files and indicates that the Village may explore criminal charges. Plaintiff denies the allegations contained in the letter. A final letter, dated February 20, 2008, from Defendant Buchanan to Plaintiff provides that a check is attached for Plaintiff's remaining salary through February 29, 2008. Def. Br. Ex. 3.

-4-

Plaintiff did not receive any annual reviews pursuant to his most recent employment contract, although he had received a few performance reviews in the past. *See* Def. Br. Ex. 5 (performance reviews dated February 9, 2001, December 3, 2001, December 1, 2003, and June 2004). Plaintiff testified that he had been doing a good job performing his duties and that he had intended to continue as Village Manager beyond February 29, 2008. Two of the council members who resigned when Plaintiff's contract was not renewed provided deposition testimony in support of Plaintiff's contention. Hagey, who served on the council from 2004 to 2008, testified that he thought that Plaintiff "was doing a fine job" at the time. Hagey Dep. 37:11-13 (June 24, 2009); Pl. Br. Ex. 6. Maurer, who served on the council from 2004 to 2008, testified that she "didn't feel [Plaintiff] had done anything grievous to consider anything for termination at all." Maurer Dep. 4:23-5:1 (June 24, 2009); Pl. Br. Ex. 3.

Additionally, Richard Joliff, who served as a council member for about one year in 2006, testified that he "personally didn't have any problems with anything that [Plaintiff] was doing with his performance. . . ." Joliff Dep. 4:18-21 (June 24, 2009); Pl. Br. Ex. 5. Patricia Rohn, who served as a council member from about 2000 to 2007, testified that she thought Plaintiff's performance as Village Manager was "okay," and acknowledged that she did not have any issues with it. P. Rohn Dep. 4:8-14 (June 24, 2009); Pl. Br. Ex. 8.

Plaintiff and several other individuals provided testimony concerning whether Plaintiff's age factored into the decision to terminate his employment. Plaintiff testified that in February 2006, he had a conversation with Defendant Buchanan, during which Defendant Buchanan asked when Plaintiff's birthday was and then appeared surprised when he learned Plaintiff's age. Pl. Dep. 60:3-61:10. Plaintiff testified that Defendant Buchanan then "went through a whole procedure of, you

know, you ought to consider retiring because when you're old enough to collect Social Security sometimes it's not worth the hassle working and that type of thing." *Id.* 61:13-19.

Plaintiff also testified that at a work session of the council on April 13, 2006, Defendant Buchanan made a statement to the effect of, "[Plaintiff is] the next one we have to work on to retire." *Id.* 63:25-65:17. Finally, Plaintiff testified that at a council planning session on October 15, 2007, council member Chapin "talked about how old people need to take naps and they can't accomplish the work that's needed to be accomplished and young people can accomplish a lot more. . . ." *Id.* 68:18-70:12. Plaintiff acknowledged in his testimony that at the January 23, 2008 meeting, neither council member Chapin nor council member Anderson said anything about his age. *Id.* 70:22-71:8.

Former council member Hagey testified that council member Chapin had once said that "older workers didn't work as hard" and indicated herself that "I even need to take a nap now because I can't work as hard as I could." Hagey Dep. 9:5-20, 19:21-20:20. Hagey testified that Chapin is approximately sixty-four years old. *Id.* 20:6-7. Hagey also testified that Defendant Buchanan stated at a special meeting that Plaintiff is "our next person to get rid of . . . because he's eligible for Social Security and he can leave." *Id.* 10:2-11. Hagey testified that generally, "I do know that there was a feeling that the retirement at the village was so superior to everybody else that they might as well not work because they were going to, they could make as much money practically without working." *Id.* 11:3-7.

Cindy Johnson, who worked for approximately thirty-three years as Village Treasurer, and is about fifty-nine years old, testified that she felt that Defendant Buchanan did not re-appoint her as Village Treasurer partly because of her age. Johnson Dep. 8:1-9:5 (June 24, 2009); Pl. Br. Ex. 14. She testified that Defendant Buchanan generally made "little comments about age," such as

-6-

"you know we're getting too old to be here and this and that."  *Id.* 9:5-9.

Karen Rohn, who served as Village Clerk for thirty-two years ending in December 2007, testified that at a council meeting in September 2007, council member Chapin made a comment "that it was time to get rid of some of the older workers and replace them with younger workers who could do a better job."  K. Rohn Dep. 5:1-13 (June 24, 2009).  She testified that some council members generally made comments demonstrating that "there were several of us that they wanted to have retire and be gone and [Plaintiff] was included in that group."  *Id.* 7:18-22.  Rohn also testified regarding Johnson, that "they said she was old enough to retire and that's what they wanted her to do."  *Id.* 8:17-24.

Former council member Patricia Rohn testified that she knew that Defendant Buchanan "wanted people to leave."  P. Rohn Dep. 5:18-24.  She testified that this concerned "[a]ll the older associates, all the older employees. [Plaintiff], Cindy, Karen, Don, anybody that was older.  It was time, you know I guess they were eligible to retire, there were comments like that."  *Id.* 6:1-4.  Finally, former council member Joliff testified that, at a couple of committee meetings, Defendant Buchanan made a "suggestion" that Plaintiff "was going to have to start looking at retiring."  Joliff Dep. 5:1-8.

## II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission

-7-

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

III

The arguments raised in Defendants' motion for summary judgment will be addressed in three parts.  First, Defendants' arguments regarding Plaintiff's due process and equal protection claims brought pursuant to § 1983 will be analyzed.  Second, Defendants' arguments regarding Plaintiff's statutory claims of age discrimination and retaliation under the Michigan ELCRA will be analyzed.  Third, Defendants' arguments regarding Plaintiff's breach of contract claim under Michigan law will be analyzed.

A

Under § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1 (1980).  Generally, to survive summary judgment in a § 1983 action, the plaintiff must demonstrate a genuine issue of material fact as to two elements: (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct caused a deprivation of the plaintiff's rights or privileges protected by the laws or Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995).

In this case, Defendants contend that they are entitled to summary judgment on Plaintiff's § 1983 claims for four main reasons.  First, Defendants contend that Plaintiff's § 1983 official

-9-

capacity claims should be dismissed against Defendant Buchanan because such claims are claims against the municipality itself, which is a named Defendant. Second, Defendants contend that Plaintiff's individual capacity claims should be dismissed against Defendant Buchanan because Defendant Buchanan did not have adequate notice of any individual capacity claims. Third, Defendants contend that Defendant Buchanan is entitled to absolute legislative immunity. Finally, Defendants contend that they are entitled to summary judgment on the merits of Plaintiff's due process and equal protection claims.

1

Defendants contend that Plaintiff's § 1983 official capacity claims should be dismissed against Defendant Buchanan because such claims are claims against the municipality itself, which is a named Defendant. *See Monell v. Dep't of Soc. Servs.*, 4326 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ."). In response, Plaintiff does not address whether official capacity claims against Defendant Buchanan should be dismissed. Based on that fact, and the fact that such claims are the equivalent of claims against the named entity, those claims will be dismissed to the extent that they are alleged.

2

Defendants contend that Plaintiff's § 1983 individual capacity claims against Defendant Buchanan should be dismissed because Plaintiff's complaint fails to give Defendant Buchanan adequate notice that he is being sued in his individual capacity. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("[I]t is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity' . . . ."). In the Sixth Circuit, failure to "explicitly

-10-

state whether a defendant is sued in his or her 'individual capacity' . . . is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore*, 272 F.3d at 772. The "course of proceedings" factors include:

> . . . the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability.

*Id.* at 772 n.1 (internal citation omitted). Pleadings subsequent to the complaint may also provide sufficient notice, to the extent that it is still early enough in the litigation. *Id.*

Here, Defendants emphasize that the complaint does not indicate that Defendant Buchanan is being sued in his individual capacity and that the allegations in the complaint refer to Defendant Buchanan's actions as a member of the Village Council. Yet, Plaintiff requested punitive damages in his complaint, which are not recoverable against a municipality, and Defendants asserted qualified immunity as an affirmative defense, which is only applicable to individual capacity claims. Additionally, Plaintiff named the entity as a defendant, which, as Defendants acknowledge, is entirely redundant if Plaintiff's claims against Defendant Buchanan were only brought against him in his official capacity. Based on the above, Defendant Buchanan had adequate notice that Plaintiff's claims were brought against him in his individual capacity and these claims will not be dismissed.

3

Defendants contend that Defendant Buchanan is entitled to absolute legislative immunity for any of his actions as a member of the Village Council. The U.S. Constitution protects federal legislators from liability for their legislative activities. U.S. Const., art. I, § 6. The U.S. Supreme Court has held that such protections extend to state and regional legislators for claims brought

against them pursuant to § 1983. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.' " *Id.* at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. "It is the defendants' burden to establish the existence of absolute legislative immunity." *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).

Defendants contend that Defendant Buchanan's conduct in this case was "legislative" because Plaintiff's allegations that Defendant Buchanan influenced the decision of the Village Council to terminate Plaintiff's employment are "no different that any legislator lobbying fellow legislators to support his proposal." In response, Plaintiff contends that the decision to not renew Plaintiff's employment contract was not a "legislative act" for which Defendant Buchanan is entitled to immunity. Plaintiff relies on *Canary*, in which the Sixth Circuit found that the decision to not renew an employment contract was "an administrative employment decision." 211 F.3d at 330-31 (finding that "the action in substance was not essentially and clearly legislative").

In this case, Defendants have not advanced any facts to suggest that the termination of Plaintiff's employment was anything other than "an administrative employment decision." For example, Defendants do not advance evidence that the position of Village Manager was terminated, or that the decision was a budgetary one. *See Bogan*, 523 U.S. at 56 (contrasting the legislative act of voting for an ordinance that "involved the termination of a position, which . . . may have prospective implications that reach well beyond the particular occupant of the office" with "the hiring or firing of a particular employee"). While Defendants try to characterize Defendant Buchanan's actions as "lobbying," this unduly narrows Plaintiff's claims regarding the vote to not

-12-

renew his contract.  Defendant Buchanan is not entitled to absolute legislative immunity.

4

Defendants contend that they are entitled to summary judgment on the merits of Plaintiff's due process claims.  The Due Process Clause of the Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest."  *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005).  Procedural due process claims require a constitutionally-protected property or liberty interest.  *See, e.g.*, *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006).

While the Constitution protects certain property and liberty interests, the Constitution does not actually create or define those property interests.  *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).  Rather, whether a plaintiff holds a protected property interest depends on "existing rules or on understandings that stem from an independent source, such as state law. . . ."  *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Generally, to create a constitutionally-protected interest, a person must have a "legitimate claim of entitlement."  *Roth*, 408 U.S. at 577.  In the employment context, "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances."  *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 566 (6th Cir. 2004).  If a protected property interest exists, "the employee must be given notice of the charges against him, an explanation of the employer's evidence, and a chance to present his side of the story."  *Id.* at 566.

Additionally, "[a] person's good name, reputation, honor, and integrity are among the liberty

-13-

interests protected by the Due Process Clause of the Fourteenth Amendment." *Manning v. City of Hazel Park*, 509 N.W.2d 874, 879 (Mich. Ct. App. 1993) (citing *Roth*, 408 U.S. at 573). "To establish a liberty interest, the employee must show conduct of the governmental employer that might seriously damage the employee's standing and associations in the community or that imposes a stigma or other disability that denies the employee the freedom to take advantage of other employment opportunities." *Id.* A liberty interest is established if a plaintiff proves five elements:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. [Fifth], the public dissemination must have been voluntary.

*Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (internal citations omitted). "If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing, when plaintiff has made a request for such a hearing. *Id.* (internal citations omitted).

Defendants contend that Plaintiff's due process claims should be dismissed for three main reasons. Defendants' first two arguments are related and will be considered together. First, Defendants contend that Plaintiff did not have a protected property interest in continued employment because he was an "at-will," public employee. Defendants emphasize that under Administrative Code § 230.02(b), the Village Manager serves at the pleasure of the Village Council. Second, even if Plaintiff does have a protected property interest, Defendants contend that Plaintiff received all of the process to which he was entitled when Plaintiff was present, and had an opportunity to speak, when the Village Council voted to not renew his contract at a special meeting on January 23, 2008.

In response, Plaintiff contends that he was not merely an "at-will" employee, and that a due

-14-

process cause of action can exist even if the employee is "at-will." As previously noted, Plaintiff's employment contract provides, "Nothing contained herein shall limit, prevent, or otherwise interfere with the right of the Council to terminate the services of the Manager at any time, subject only to the provision set forth in paragraph (c) . . . ," which provides:

> In the event that the Manager is terminated by the Council during such time that the Manager is willing to perform the duties of the Village Manager, then, in that event, the Village agrees to pay the Manager a lump sum cash payment equal to thirty days at his then current rate of salary. Further, said manager's benefits shall continue for a thirty-day period.

Plaintiff contends that because his employment contract was for a definite period of time, his employment could not be terminated without just cause, citing *Biggs v. Hilton Hotel Corp.*, 486 N.W.2d 61, 62 (Mich. Ct. App. 1992) (per curiam).

Plaintiff's contention that his employment could not be terminated without "just cause" is untenable, given that there is no reference in the contract to "cause" or "without cause," and the contract refers to "the laws of the State of Michigan, and the Ordinances of the Village," which clearly provide that the Village Manager serves "at the pleasure of the Council." *See, e.g.*, Vill. Admin. Code § 230.02(b). Thus, any presumption that an employment contract for a defined period of time is for "just cause," *see Biggs*, 486 N.W.2d at 62, is overcome.

Plaintiff also contends that Defendant Buchanan improperly removed Plaintiff from his position on February 7, 2008. Plaintiff emphasizes that the Village Council did not vote to remove Plaintiff from his position, only to not renew Plaintiff's contract beyond the current term. While Plaintiff may have had a protected property interest in not being removed from his position prior to the expiration of the contract without "the affirmative vote of four or more Trustees," Plaintiff does not explain how any decision by any of Defendants to have Plaintiff discontinue his job responsibilities, but continue to receive pay and benefits, amounts to "removal" from the position

of Village Manager.  Thus, Defendants are entitled to summary judgment on Plaintiff's due process

claims involving a property interest in employment as Village Manager.

Defendants' third argument is that Plaintiff cannot establish the deprivation of a protected

liberty interest in pursuing his occupation with other employers when Defendants' statements at the

special meeting were not "stigmatizing" and related only to inadequate performance by Plaintiff.

In response, Plaintiff contends that the statements made by the Village Council were much broader

in scope than mere criticisms regarding specific performance deficiencies.  Specifically, Plaintiff

contends that a statement by a council member that Plaintiff was a "lousy manager" was equivalent

to a statement that Plaintiff was incapable of serving as a manager anywhere.  Plaintiff's contention

is without merit as a statement that Plaintiff was a "lousy manager" merely describes his perceived

performance as Village Manager.  *See Ludwig*, 123 F.3d at 410 ("A charge that merely makes a

plaintiff less attractive to other employers but leaves open a range of opportunity does not constitute

a liberty deprivation.").  Thus, Defendants are entitled to summary judgment on Plaintiff's due

process claims involving a liberty interest in other employment.

5

Finally, Defendants contend that Plaintiff's equal protection claim should be dismissed

because "the class-of-one theory of equal protection does not apply in the public employment

context," quoting *Engquist v. Or. Dep't of Agric.*, - - - U.S. - - - -, 128 S. Ct. 2146, 2151 (2008).  In

response, Plaintiff concedes the point, but contends that his equal protection claim extends beyond

a "class-of-one" theory of recovery, as he has alleged discrimination based on age in his complaint.

*See id.* at 2155 ("[O]ur cases make clear that the Equal Protection Clause is implicated when the

government makes class-based decisions in the employment context, treating distinct groups of

individuals categorically differently."). While it may be debatable whether it was entirely clear from Plaintiff's complaint that he was alleging an age-based equal protection claim, Defendants did not file a reply debating that point. Defendants' motion did not address an age-based equal protection claim, thus, they have not demonstrated their entitlement to summary judgment on Plaintiff's equal protection claim to the extent that it involves more than a "class-of-one" theory of recovery.

B

Next, Defendants contend that they are entitled to summary judgment based on the merits of Plaintiff's age discrimination and retaliation claims under the Michigan ELCRA. Notably, Plaintiff has "responded" to arguments concerning a cause of action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., however, no such claim is alleged in Plaintiff's complaint or addressed by Defendants' motion for summary judgment.

1

The Michigan ELCRA provides that an employer shall not:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Mich. Comp. Laws §37.2202(1)(a). A plaintiff can establish a claim of unlawful discrimination under the ELCRA either by producing direct evidence of discrimination or by presenting a prima facie case of discrimination in accordance with the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 67-68 (Mich. 1997). While *McDonnell Douglas* was a race discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Michigan Supreme Court has consistently utilized the framework to address claims of unlawful

-17-

discrimination under the ELCRA. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001).

Nonetheless, "[w]hen a discrimination case proceeds to trial, the focus is on the ultimate question of discrimination, rather than the burden-switching framework, regardless of whether a plaintiff seeks to prove his case through direct evidence or circumstantial evidence." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 526 n.9 (6th Cir. 2007) (finding that a jury need not be instructed on the *McDonnell Douglas* framework). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle*, 628 N.W.2d at 520 (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Statements such as "If I have to, I will get rid of the older guys--you older guys and replace you with younger ones," made by a decision maker, have been held to constitute "direct evidence" of discrimination. *Downey v. Charlevoix County Bd. of Road Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998).

In a direct evidence case involving mixed motives, i.e., where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a "substantial" or "motivating" factor in the decision. *Sniecinski v. Blue Cross and Blue Shield of Mich.*, 666 N.W.2d 186, 192-93 (Mich. 2003) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989) (plurality)). "[A] defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision." *Id.*

(citing *Price Waterhouse*, 490 U.S. at 244-45). This is typically a question for the jury. *Harrison v. Olde Financial Corp.*, 572 N.W.2d 679, 684 (Mich. Ct. App. 1997).

If a plaintiff is unable to produce direct evidence of discrimination, he may still survive a summary judgment motion by offering circumstantial evidence from which an inference of unlawful discrimination can be drawn under the burden-shifting analysis of *McDonnell Douglas*. First, to establish a prima facie case under *McDonnell Douglas*, a plaintiff must demonstrate that:

> (1) [he] was a member of the protected class; (2) [he] suffered an adverse employment action . . .; (3) [he] was qualified for the position; but (4) [he] was discharged under circumstances that give rise to an inference of unlawful discrimination.

*Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998) (footnote omitted). In age discrimination cases, the fourth element of a prima facie case can be established with evidence that the plaintiff "was replaced by a younger person." *Id.* at 916. It can also be established with evidence that the defendant treated the plaintiff differently than persons of a different age class who engaged in the same or similar conduct. *Town*, 568 N.W.2d at 68.

Second, a presumption of unlawful discrimination arises from establishment of the prima facie case, and the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *Lytle*, 579 N.W.2d at 915. If the defendant articulates a reason, the burden of proof returns to the plaintiff. *Id.* Third, and finally, "[a] plaintiff ha[s] to show . . . that there [i]s a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id.* Plaintiff can establish pretext in three ways: (1) by showing that the reason had no basis in fact, (2) if the reason had a basis in fact, by showing that it was not the actual factor motivating the decision, or (3) if it was a factor, by showing that it was insufficient to justify the decision. *Feick v. Monroe County*, 582 N.W.2d 207, 212 (Mich. Ct. App.

-19-

1998) (internal citation omitted).

a

A threshold issue raised by Defendants' motion for summary judgment is whether the recently decided case of *Gross v. FBL Financial Services, Inc.*, - - - U.S. - - - -, 129 S. Ct. 2343 (June 18, 2009), impacts the analysis of age discrimination claims under the Michigan ELCRA.  In *Gross*, the Court clarified that there is a distinction between what a plaintiff is required to prove in a disparate treatment claim under the ADEA as opposed to Title VII.  129 S. Ct. at 2349-50.  The Court held that "[t]o establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.* at 2350.  This is in contrast to Title VII, where a plaintiff can succeed on a claim "in which an improper consideration was 'a motivating factor' for an adverse employment decision."  *Id.* at 2349 (citing 42 U.S.C. § 2000e-2(m), and *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94-95 (2003)).

The Court explained that, in *Price Waterhouse*, 490 U.S. at 258, a plurality of the Court found that once a "plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account."  *Gross*, 129 S. Ct. at 2349.  The Court then noted that post-*Price Waterhouse*, in 1991, Congress amended Title VII, but not the ADEA, to "explicitly authoriz[e] claims in which an improper consideration was 'a motivating factor' for an adverse employment decision."  *Id.* (citing § 2000e-2(m), and *Desert Palace*, 539 U.S. at 94-95).  The Court further explained that it had never held that the burden-shifting framework of *Price Waterhouse* applies to ADEA claims.  *Id.*

-20-

The Court then returned to the language of the ADEA, which provides that it shall be unlawful for an employer to take an adverse employment action "*because of* such individual's age." *Id.* at 2350 (quoting 29 U.S.C. § 623(a)(1)) (emphasis in opinion). The Court explained that "because of" means "by reason of: on account of." *Id.* (quoting, inter alia, 1 Webster's Third New International Dictionary 194 (1966)). Thus, the Court concluded that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Id.* (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Finally, the Court characterized *Price Waterhouse* as establishing that "the burden of persuasion shifted in alleged mixed-motive Title VII claims," and questioned whether "the Court would have the same approach were it to consider the question today in the first instance" due to the difficulty of applying such a framework. *Id.* at 2351-52.

Defendants contend that this Court should apply *Gross* and a "but-for" standard to Plaintiff's age discrimination claim under the ELCRA because federal courts, including the Sixth Circuit Court of Appeals, have noted that "the same standards and mode of analysis apply to claims arising under [the ADEA and the ELCRA]." *See, e.g.*, *Blair*, 505 F.3d at 523. Defendants emphasize that the ELCRA uses the same "because of" language as the ADEA.

A federal court deciding an issue of state law must apply the law of the state's highest court. If the state's highest court has not decided the applicable law, the federal court must ascertain the state law from "all relevant data." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). A state's intermediate appellate court decision is a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214,

218-19 (6th Cir. 1990) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). Nonetheless, Michigan courts may follow a federal court decision if the reasoning is persuasive. *Allens v. Owens-Corning Fiberglas Corp.*, 571 N.W.2d 530, 533 (Mich. Ct. App. 1997).

The Michigan Supreme Court has previously found that "the reasoning of *Price Waterhouse* is applicable in cases arising under the [EL]CRA." *Sniecinski*, 666 N.W.2d at 193 n.6. At least one Michigan appellate court has since acknowledged that Congress' 1991 amendment to Title VII "effectively overruled *Price Waterhouse*." *Harrison*, 572 N.W.2d at 684 n.15 (internal citation omitted). Nevertheless, the appellate court found that the 1991 amendments did not affect its analysis of unlawful discrimination claims under the ELCRA because "the Michigan Civil Rights Act is patterned on the federal Civil Rights Act of 1964." *Id.* Thus, the court determined that the analysis of *Price Waterhouse* continued to be applicable to claims under the Michigan ELCRA. The court emphasized the importance of "preservation of an employer's remaining freedom of choice" in making employment decisions. *Id.* at 684.

In sum, there is a basis under federal law for treating age discrimination claims differently under the ADEA than other claims of discrimination under Title VII, because of differences in the statutes; however, in Michigan, no such basis for differentiation exists because age discrimination claims are addressed by the same Michigan statute as other claims of discrimination. While the U.S. Supreme Court never held that *Price Waterhouse* was applicable to age discrimination claims under the ADEA, *Gross*, 129 S. Ct. at 2349, the Michigan Supreme Court has held, without singling out only specific protected classes, that the reasoning of *Price Waterhouse* is applicable to discrimination claims under the ELCRA. *Sniecinski*, 666 N.W.2d at 193 n.6. Moreover, while the U.S. Congress amended Title VII in 1991 at least in part in response to *Price Waterhouse*, the

ELCRA was never similarly amended.  Thus, *Gross* is inapplicable to the case now before this Court.

b

Defendants contend that Plaintiff has not advanced either direct or circumstantial evidence of age discrimination because the statements advanced by Plaintiff are merely "stray remarks" that were not related to the decisionmaking process and were not made in close temporal proximity to the decision to not renew Plaintiff's contract.  In contrast, Plaintiff contends that he has advanced direct evidence that "Defendant Buchanan and other Council Persons did not want Plaintiff to continue his employment due to his age and that they wanted him gone."

For the most part, the statements advanced by Plaintiff through his testimony and the testimony of other employees, clearly do not amount to direct evidence of discrimination.  For instance, Plaintiff testified that when Defendant Buchanan learned Plaintiff's age in February 2006, he told Plaintiff, "you ought to consider retiring."  Such a statement requires an inference that, because Defendant Buchanan thought Plaintiff should retire, he would vote to not renew Plaintiff's employment contract two years later if Plaintiff did not voluntarily retire by then.  Thus, such a statement does not constitute direct evidence of discrimination.

However, two statements advanced by Plaintiff present a closer question as to whether they constitute direct evidence of discrimination.  First, Hagey testified that Defendant Buchanan stated at a special meeting that Plaintiff is "our next person to get rid of . . . because he's eligible for Social Security and he can leave."  On the surface, this statement appears to require no inference that Defendant Buchanan decided to "get rid" of Plaintiff because he was eligible, based on his age, to collect social security benefits.  However, it is not entirely insignificant that the general timing of

-23-

this statement is not established by Hagey's testimony.  While Hagey only served as a council member from 2004 to 2008, Plaintiff's most recent employment contract governed the term from March 1, 2005, to February 29, 2008.  If Defendant Buchanan's alleged statement was made prior to the renewal of Plaintiff's contract as of March 1, 2005, it may be sufficiently attenuated from the vote in January 2008 to not constitute direct evidence.  For example, if Defendant Buchanan supported the renewal of Plaintiff's contract as of March 1, 2005, an inference becomes necessary to conclude that, although Defendant Buchanan did not attempt to "get rid" of Plaintiff after the first opportunity to do so on about March 1, 2005, he did so nearly three years later, in January 2008.

The second statement that presents a close question as to whether it constitutes direct evidence was advanced through the deposition testimony of former Village Clerk Karen Rohn.  She testified that at a council meeting in September 2007, council member Chapin made a comment "that it was time to get rid of some of the older workers and replace them with younger workers who could do a better job."  Significantly, Chapin was one of the council members who voted to not renew Plaintiff's contract.  Although Chapin's alleged statement did not refer explicitly to Plaintiff, there is at least a colorable argument that no inference is necessary to conclude that Chapin made her decision to vote against renewal of Plaintiff's contract in order to replace an older worker with a younger worker.  Significantly, Chapin's alleged statement was made just four months prior to the vote on the renewal of Plaintiff's contract.

At this juncture, however, it is not necessary to decide whether these statements constitute direct evidence of age discrimination, because Plaintiff has advanced sufficient circumstantial evidence of age discrimination to survive summary judgment under the *McDonnell Douglas* framework.  In their motion, Defendants contend that Plaintiff cannot establish a prima facie case

-24-

of age discrimination because he cannot establish the third and fourth elements, that he was qualified for the position and that he was replaced by a significantly younger person, respectively.

Defendants contend that Plaintiff cannot establish that he was qualified for the position because he cannot establish that he was performing the job "at a level which meets his employer's legitimate expectations," quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990). Defendants emphasize that at the special meeting on January 23, 2008, a council member stated that Plaintiff was a lousy manager. Defendants also emphasize that Plaintiff testified that he was aware that Defendant Buchanan criticized his work in front of other employees. Significantly, however, Plaintiff has advanced the testimony of several council members to suggest that he was adequately performing his job. Thus, there is a genuine issue of material fact, and Defendants have not demonstrated that Plaintiff cannot prove this element as a matter of law.

Defendants contend that Plaintiff cannot establish that he was replaced by someone adequately younger because "Plaintiff was replaced by Bob Mecomber who took on the additional duties of Village Manager as well as his position as Chief of Police. Mecomber was over 40." Defendants do not further elaborate on this argument. In response, Plaintiff contends that, under Michigan law, he must only prove that he was replaced by someone younger, not someone "substantially younger." Additionally, Plaintiff contends that the age difference between Plaintiff and Mecomber, approximately seventeen years, is sufficient. Indeed, in *Cicero v. Borg-Warner Automotive, Inc.*, the Sixth Circuit found that "[a] question of fact remains for a fact finder to resolve whether, under the circumstances of the present case, the seven and one-half year age difference satisfies the fourth prong of Cicero's prima facie case." 280 F.3d 579, 588 (6th Cir. 2002). In this case, Defendant has not demonstrated that the age difference between Plaintiff and Mecomber was

-25-

not significant as a matter of law.

After Plaintiff has established a prima facie case of unlawful discrimination, the burden shifts to Defendants to produce a legitimate, nondiscriminatory reason for the decision to not renew Plaintiff's contract.  Here, Defendants contends that they were not satisfied with Plaintiff's job performance.  Thus, the burden returns to Plaintiff to advance evidence of pretext.  Defendants contend that Plaintiff has not advanced evidence of pretext because he cannot come forward with evidence to establish that his job performance was insufficient to warrant the challenged conduct.

However, this argument is undercut by the fact that Plaintiff has advanced evidence, in the form of testimony by former council members, that his job performance was good, or at least adequate.  While evaluation of an employee's job performance may be subjective and different council members may have had different views of Plaintiff's performance, Plaintiff has also advanced evidence of age bias by two of the four council members who purportedly had issues with Plaintiff's performance.  For example, Plaintiff testified that at a council planning session on October 15, 2007, council member Chapin "talked about how old people need to take naps and they can't accomplish the work that's needed to be accomplished and young people can accomplish a lot more. . . ."  Former council member Hagey testified to similar statements by Chapin.

Additionally Former Village Treasurer Johnson testified that Defendant Buchanan generally made "little comments about age," such as "you know we're getting too old to be here and this and that."  Former Village Clerk Karen Rohn testified that some council members generally made comments demonstrating that "there were several of us that they wanted to have retire and be gone and [Plaintiff] was included in that group."  *Id.* 7:18-22.  Based on the above, Plaintiff has advanced sufficient evidence of pretext to survive Defendants' motion for summary judgment.  Defendant is

-26-

not entitled to summary judgment on Plaintiff's age discrimination claim under the ELCRA.

2

The ELCRA prohibits an employer from retaliating against an employee for pursuing rights

under the ELCRA:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

Mich. Comp. Laws § 37.2701(a).  Like discrimination claims, a plaintiff may prove a retaliation

claim through direct or circumstantial evidence, and when proceeding with only circumstantial

evidence, the *McDonnell Douglas* framework applies.

To establish a prima facie case of retaliation, a plaintiff must demonstrate: "(1) that the

plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the

defendant took an employment action adverse to the plaintiff, and (4) that there was a causal

connection between the protected activity and the adverse employment action." *Barrett v. Kirtland

Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001); *Imwalle v. Reliance Med. Prods., Inc.*, 515

F.3d 531, 544 (6th Cir. 2008).  "To establish causation, the plaintiff must show that his participation

in activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse

employment action, not just that there was a causal link between the two." *Barrett*, 628 N.W.2d at

70 (citing, inter alia, *Jacklyn*, 176 F.3d at 929).

Defendants' primary argument in their motion for summary judgment is that Plaintiff cannot

establish a prima facie case of retaliation because Defendants did not take an "adverse employment

action" that can be connected to any protected activity by Plaintiff.  Defendants characterize

Plaintiff's retaliation claim as being based on the non-payment of severance and accrued mileage reimbursement in retaliation for his expression of his belief that he was the subject of age discrimination and seeking legal representation. Defendants emphasize that Plaintiff was not entitled to any severance pay under his contract and that Plaintiff was not paid the offered severance because he did not agree to the release of claims. Defendants also challenge whether Plaintiff's statements regarding age discrimination constitute protected activity.

In response, Plaintiff contends that Defendants have mischaracterized his retaliation claim. Plaintiff asserts that the adverse employment actions on which his claim is based include the elimination of his job responsibilities on February 7, 2008; the non-renewal of his employment contract; the failure to pay thirty days of severance pay; and the failure to pay at least nineteen months of wages because Defendants have still not held the hearing that was necessary to "remove" him from his position on February 7, 2008. Plaintiff also contends that his conduct constituted protected activity because the ELCRA protects "expressed concern to his employer about possible discrimination . . . [r]egardless of the vagueness of the charge or lack of formal invocation of the protection of the act." *McLemore v. Detroit Receiving Hosp. & Univ. Med. Ctr.*, 493 N.W.2d 441, 443 (Mich. Ct. App. 1992) (rejecting the narrower definition of protected activity expressed in *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312-14 (6th Cir. 1989)).

While Plaintiff emphasizes his testimony that he told council member Schaub that "you will be facing an age discrimination suit," Pl. Dep. 67:3-68:2, Plaintiff has not advanced any evidence of a causal connection between that statement and any of the alleged adverse employment actions. Thus, Defendants are entitled to summary judgment on Plaintiff's retaliation claim under the ELCRA.

C

Defendants contend that they are entitled to summary judgment on Plaintiff's breach of contract claim because there was no breach of contract when Plaintiff's employment was not terminated before the expiration of his contract and Plaintiff was paid through the end of the contract term. In response, Plaintiff contends that when the Village Council voted not to renew his contract, the Village effectively terminated his employment. Plaintiff contends that because he was "willing to perform the duties of the Village Manager," and Defendants had no cause to terminate his employment, he was entitled to the continuation of his salary and benefits for thirty days, pursuant to the "penalty clause" of the employment contract. Thus, Plaintiff contends that Defendants' failure to pay Plaintiff thirty days worth of salary and benefits constitutes a breach of contract.

As previously noted, however, Plaintiff's contention that his employment can only be terminated for cause is untenable, given the fact that it is clear that the Village Manager serves "at the pleasure of the Council." Moreover, nothing in the contract suggests that Plaintiff was entitled to benefits under paragraph 2(c) if the Council chose not to renew Plaintiff's contract, as opposed to terminating his employment while the contract was in effect. Plaintiff's employment was not terminated prior to the time that the contract expired and he was not entitled to the benefits under paragraph 2(c) of the contract. Thus, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

IV

The last issue requiring attention is the affidavit of Plaintiff's counsel filed pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Under Rule 56(f), if a party opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential

to justify its opposition," a district court has discretion to deny the motion, order a continuance, or issue any other just order." *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994). However, a court is not required to allow time for further discovery "if the party does not explain how such discovery would rebut the movant's showing of the absence of a genuine issue of material fact." *Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002). Relevant factors include when the party "learned of the issue that is the subject of the desired discovery," the potential impact of the desired discovery on the summary judgment ruling, "how long the discovery period lasted," whether the party was "dilatory in its discovery efforts," and whether the party was "responsive to discovery requests." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-1197 (6th Cir. 1995) (internal citations omitted).

Here, the affidavit of Plaintiff's counsel states that Plaintiff has been unable to obtain the deposition of Defendant Buchanan because defense counsel has refused to produce him, citing health problems and scheduling conflicts. Plaintiff requests an opportunity to supplement his response to Defendants' motion for summary judgment with Defendant Buchanan's deposition testimony if the Court is inclined to grant any part of Defendants' motion. Yet, Plaintiff has not identified with any specificity the claims or arguments to which he anticipates that Defendant Buchanan's testimony will be material. Indeed, it is not apparent to the Court how any factual testimony provided by Defendant Buchanan would be material to the analysis of Defendants' motion and Plaintiff's claims above. Thus, Plaintiff's request under Rule 56(f) will be denied.

V

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 11]

is **GRANTED IN PART** and **DENIED IN PART**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 9, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on October 9, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS